United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

William Lukov,

Plaintiff,

v.

Schindler Elevator Corporation,

Defendant.

Case No.: 5:11-CV-00201-EJD

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION**

**[Re: Docket Nos. 79, 80]**

Plaintiff William Lukov ("Plaintiff") brings this action for retaliatory termination against Defendant Schindler Elevator Corporation ("Defendant"). Presently before the court are the parties' cross motions for summary judgment. For the reasons set forth below, Defendant's motion for summary judgment is GRANTED, and Plaintiff's motion for summary adjudication is DENIED.

## I. Background

Plaintiff is an elevator mechanic who was employed by Defendant from April 2006 until his termination in 2009. Defendant is in the business of "constructing, modernizing, repairing, and servicing elevators, escalators, and moving walks." Def. MSJ at 2, Dkt. No. 80; Lay Decl., ¶ 2. Plaintiff first worked for Defendant from March 2000 to December 2002 as a temporary mechanic.

Several years later, in April 2006, Plaintiff was re-hired by Defendant as a "Quality Auditor" and an on-call Superintendent. In 2007, Plaintiff became an "interim" Superintendent, but was transferred to a service mechanic position in November 2007.

As a service mechanic, Plaintiff was assigned a route in the San Jose region ("South Bay"), and was required to service elevators, escalators, and dumbwaiters of the customers on that route. Lukov Dep. at 48:10-49:7. His job duties included servicing the equipment, taking trouble calls, performing repairs, communicating with customers, ordering parts, conducting tests and examinations of the equipment, identifying potential safety issues, and certifying that certain standards are met. Pl. MSJ at 2, Dkt. No. 79. The Nordstrom store at Valley Fair ("Nordstrom") was a customer on Plaintiff's service route.

The Elevator Unit of the California Division of Occupational Safety and Health ("DOSH") is the state regulatory agency responsible for monitoring and overseeing elevator safety, and is currently managed by Debra Tudor. Koonin Decl., Ex. H. Elevators must be examined annually to renew their operating permits. See Def. MSJ at 7. After examining an elevator, the DOSH inspector prepares a "preliminary order," which is a list of tasks that must be completed by a certain date to renew the elevator operating permit. Id. DOSH issues these preliminary orders to the owner of the elevator. Id. Some of the tasks included on these preliminary orders must be completed by the elevator company responsible for the elevator. Id.

On March 18, 2009, DOSH issued four "preliminary orders" to Nordstrom. Lukov Dep. at 56:16-57:7; Adelman Decl., Ex. 7; Tudo Dep. at 53:5-54:1. Among the tasks listed was completion of the annual fire and safety testing (Adelman Decl., Ex. 7), which requires a vendor such as a fire alarm company to perform the testing, and the elevator company's service mechanic to observe and certify the results of such testing (Def. MSJ at 7:9-13). Plaintiff was called upon to observe and certify the annual fire safety testing of the Nordstrom elevator.

Elevator fire testing consists of multiple phases, but the only relevant phase for purposes of these motions is the testing of the shunt trip circuit breaker device ("shunt trip"). A shunt trip is a circuit breaker device that, during a fire, cuts off power to the elevator equipment in a machine

**United States District Court**
For the Northern District of California

room before the fire sprinklers engage. Lukov Dep. at 117:10-17. At this phase of the testing, the vendor conducting the test applies heat to activate the heat detector in the shunt trip to determine if the heat will trip the shunt trip to cut off power to the elevator prior to the activation of the fire sprinklers. Tudor Dep. at 115:6-18. Plaintiff was present for the shunt trip testing of the Nordstrom elevator. Lukov Dep. at 91:1-8; 106:2-9. He observed that the shunt trips did shut off the power as required, but became concerned because the shunt trips were located in the elevator machine room, and had residual power on the live (line) side of the disconnected circuit breaker, which Plaintiff believes would be hazardous when exposed to water. Lukov Dep. at 118:8-119:2; 127:2-128:23.

Plaintiff communicated his concern to Nordstrom, Defendant, and DOSH multiple times over the course of several months. During the testing, Plaintiff expressed his concern to Batista Perea, Nordstrom's senior engineer, and indicated he would not certify the elevator until the shunt trip was fixed. Lukov Dep. at 122:10-14; 123:22-124:6, 129:13-24. On the day of the testing, Plaintiff also spoke with Romina "Mina" Pacheco, the local Schindler Office Coordinator, as well as two higher-level employees of Defendant, to inform them of the shunt trip issue. Lukov Dep. at 129:25-131:18; 133:14-21. Soon after the testing, he discussed the shunt trip location with his coworkers Murphy, Fearnside, and Novosel. Lukov Dep. at 135:2-24, 136:13-21. Plaintiff later informed Tony Villa, Nordstrom's national director of facilities, that the shunt trip was not in compliance. Lukov Dep. at 150:18-152:17.

Plaintiff contacted DOSH on or about May 27, 2009, requesting an extension for Nordstrom to relocate the shunt trip. Lukov Dep. at 150:18-153:11, Ex. 8; Pacheco Dep. at 74:17-76:4, Ex. 10. The extension was granted. Later, in June or July of 2009, Plaintiff again contacted DOSH requesting a second extension for Nordstrom, but was denied. Lukov Dep. at 158:24-159:7; 160:21-161:23; 256:17-21.

After this second communication with DOSH, Chris Aissa, Defendant's District Service Manager, phoned Plaintiff and asked him why he had "turned Nordstrom in" to DOSH. Lukov Dep. at 162:18-164:4. Mr. Aissa asked Plaintiff several times if the shunt trip had worked, to

which Plaintiff said "yes it tripped," but went on to explain that "it was located in the wrong spot." Lukov Dep. at 164:13-22. Mr. Aissa then told Plaintiff to let him know if a situation like that ever came up again. Lukov Dep. at 181:6-8.

In August 2009, Plaintiff advised Mr. Lutter, Defendant's Superintendent in the South Bay, that he believed Nordstrom's elevators were still out of compliance, and that he would not certify them. Lutter Dep. at 132:17-23; 133:21-134:7. Several months later, in January of 2010, Mr. Villa asked Mr. Aissa to remove Plaintiff from Nordstrom's account. Aissa Dep. at 82:7-83:5; 232:9-23. Mr. Aissa did not ask and was not told the basis of the request. Id. Defendant did remove Plaintiff from the Nordstrom account on February 1 or 2, 2010. Lukov Dep. at 191:16-192:4.

Around the same time, new District Manager Brad Lay authorized the San Jose region to lay off one employee. Lay Dep. at 49:19-50:7. Mr. Lay relied on Mr. Lutter and Mr. Aissa to decide which employee should be laid off. Id. at 49:22-24. Mr. Lutter recommended Plaintiff based on performance reports and customer complaints. Lutter Dep. at 65:15-66:22; 74:20-76:5; 81:15-82:16. Mr. Aissa, relying on Mr. Lutter's recommendation, selected Plaintiff to be laid off. Aissa Dep. at 16:20-17:18. On February 5, 2010, Defendant laid off Plaintiff. Lukov Dep. at 78:8-10; Lutter Dep. at 145:25-146:2.

**II. Legal Standard**

A motion for summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). The moving party bears the initial burden of informing the court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party does not satisfy its initial burden, the nonmoving party has no obligation to produce anything and summary judgment must be denied. Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1102–03 (9th Cir. 2000). On the other hand, if the moving party does meet this initial burden, the burden then shifts to the nonmoving party to go

United States District Court
For the Northern District of California

beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324. The court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324. However, the mere suggestion that facts are in controversy, as well as conclusory or speculative testimony in affidavits and moving papers, is not sufficient to defeat summary judgment. See Thornhill Publ'g Co. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979). Instead, the non-moving party must come forward with admissible evidence to satisfy the burden. Fed. R. Civ. P. 56(c); see also Hal Roach Studios, Inc. v. Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1990).

Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). However, where the nonmoving party will have the burden of proof at trial on a particular issue, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325. Provided there has been adequate time for discovery, summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322–23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

## III. Discussion

Plaintiff asserts causes of action for wrongful discharge in violation of California Labor Code Sections 6310 and 1102.5 and wrongful termination in violation of California public policy based on the California Occupational Safety and Health Act of 1973 (California Labor Code §§ 6300 et seq.), California Whistleblower Protection Act (California Labor Code § 1102.5), California statutes regulating the safety and inspection of elevators (California Labor Code § 7300 et seq.), the rules and regulations of CalOSHA, and the American Society of Mechanical Engineers ("ASME") Safety Code for Elevators and Escalators. Defendant has moved for summary judgment as to all of Plaintiff's claims, asserting that Plaintiff has failed to establish a prima facie case of

United States District Court
For the Northern District of California

retaliatory termination for each claim, or alternatively that Plaintiff has not established pretext. Def. MSJ at 3. Plaintiff opposes Defendant's motion, and separately moves for partial summary judgment that under California Labor Code Section 6310(b) Plaintiff made a bona fide complaint to DOSH and Defendant of unsafe working conditions in Plaintiff's employment or place of employment, and that under California Labor Code Section 1102.5(b) Plaintiff disclosed to DOSH information which he reasonably believed disclosed a violation of California statute, rule, or regulation. Pl. MSJ at 1-2.

Analysis of a claim for retaliatory termination under California law follows a three step approach. First, Plaintiff must establish a prima facie case. If he succeeds, the burden shifts to Defendant to establish a legitimate non-retaliatory reason for the adverse employment action. If Defendant carries its burden, Plaintiff must then demonstrate that Defendant's stated reasons are merely pretext for retaliation. See Yanowitz v. L'Oreal USA, Inc., 36 Cal.4th 1028, 1042 (2005) (adopting burden-shifting framework under Title VII of the Civil Rights Act of 1964 established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–05 (1973)).

To prove a prima facie case of retaliation, Plaintiff must show "(1) that he engaged in a protected activity; (2) the employer subjected him to an adverse employment action, and (3) a causal link between the protected activity and the employer's action." Muller v. Automobile Club of S. Cal., 61 Cal.App.4th 431, 451 (Cal. Ct. App. 1988); Remus v. Fios, Inc., No. 11-cv-01264, 2012 WL 707477, at *10 (N.D. Cal. March 5, 2012) (citing Akers v. Cnty. of San Diego, 95 Cal.App.4th 1441, 1453 (2002)). Each of Plaintiff's causes of action must be analyzed under this framework.

**A. California Occupational Safety and Health Act of 1973 – Cal. Labor Code § 6310**

Plaintiff's first cause of action alleges that Defendant violated California Labor Code Section 6310 by terminating Plaintiff for making a workplace safety complaint to Defendant and DOSH. Defendant contends that Plaintiff cannot establish a prima facie case on this claim

because his communications regarding the location of the Nordstrom elevator shunt trip do not constitute protected activity.

An activity is "protected" if it implicates an important public interest that is "tethered to fundamental policies that are delineated in constitutional or statutory provisions." Green v. Ralee Eng'g Co., 19 Cal.4th 66, 71 (1998) (internal quotation marks and citation omitted). The California Occupational Safety and Health Act of 1973 was enacted "for the purpose of assuring safe and healthful working conditions for all California working men and women…." Cal. Labor Code § 6300. To further this purpose, Section 6310 institutes safeguards for employees who make complaints relating to their own workplace safety. Specifically, California Labor Code Section 6310(a)(1) prohibits an employer from discharging an employee who has "made any oral or written complaint to the division, other governmental agencies having statutory responsibility for or assisting the division with reference to employee safety or health, his or her employer, or his or her representative."

Here, Plaintiff reported what he believed to be a shunt trip safety violation in Nordstrom's elevator to Nordstrom, Defendant, and DOSH. Part of Plaintiff's job responsibilities included informing DOSH of his client's compliance with the DOSH preliminary order requirements. Pl. MSJ at 4:22-26. If any elevator equipment needed to be repaired in order to comply with the preliminary order, the repairs would need to be completed before Plaintiff could advise DOSH that the order was satisfied. Id. at 5:4-6. Plaintiff's communications regarding the potential shunt trip violation in Nordstrom's elevator thus fell within the Plaintiff's job responsibilities.

Courts addressing this issue have made clear that an employee whose job entails assessing compliance with statutes and regulations or reporting to government agencies only engages in protected activity if he or she "steps outside" of his or her role of representing the company by initiating an action or asserting protected rights against his or her employer. See McKenzie v. Renberg's Inc., 94 F.3d 1478, 1486 (10th Cir. 1996) (holding employee's actions did not constitute protected activity because the plaintiff "never crossed the line from being an employee merely performing her job as personnel director to an employee lodging a personal complaint…."); Muniz

United States District Court
For the Northern District of California

v. UPS, Inc., 731 F.Supp.2d 961, 969 (N.D. Cal. 2010) (finding McKenzie to be "persuasive" as to defining "protected activity" under Cal. Labor Code § 1102.5); Lund v. Leprino Foods Co., No. Civ. S-06-0431, 2007 WL 1775474 at *8 (E.D. Cal. June 20, 2007) (applying the McKenzie analysis to § 6310 claims). Plaintiff here has submitted no evidence suggesting that he was doing anything other than his job. That Plaintiff was reporting a potentially dangerous situation pursuant to his job responsibilities is insufficient to support a finding of protected activity. An employee does not engage in protected activity under Section 6310 by reporting a situation which may be dangerous to the public, or even other employees, if the employee does not allege safety issues concerning his own workplace or working conditions. See, e.g. Creighton v City of Livingston, 628 F.Supp.2d 1199, 1223 (E.D. Cal. 2009) (granting judgment on the pleadings as to Plaintiff's Section 6310 claim because even though Plaintiff, a city public works director, reported a contaminated water health risk to city residents and potentially to city employees, he did not allege any facts indicating he himself was exposed to unsafe working conditions). Plaintiff has failed to submit any evidence to show that his communications with Defendant and Dosh contained any complaint regarding Plaintiff's own safety. The court finds that Plaintiff did not "step outside" of his role, and therefore Plaintiff did not engage in protected activity under Section 6310.

Plaintiff has failed to prove his prima facie case under Section 6310 because Plaintiff's communications do not constitute protected activity. Defendant's motion for summary judgment as to Plaintiff's first cause of action is therefore GRANTED. Plaintiff's motion for partial summary judgment as to whether he made a "bona fide" complaint about workplace safety is DENIED.

**B. The California Whistleblower Protection Act - Cal. Labor Code Section 1102.5**

The California Whistleblower Protection Act, Cal. Labor Code § 1102.5 protects from retaliation an employee who discloses information regarding his employer's violation of a statute or law to a governmental agency. Specifically, Section 1102.5(b) provides that:

> [a]n employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to

believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation.

Retaliation claims under Section 1102.5 must satisfy the same prima facie test as those brought under Section 6310. See Patten v. Grant Joint Union High School Dist., 134 Cal.App.4th 1378, 1384 (Cal. Ct. App. 2005).

The parties dispute whether Plaintiff's communications with DOSH constituted protected activity. Reporting an employer's violation or noncompliance with a state or federal rule or regulation constitutes protected activity under Section 1102.5. Plaintiff contacted DOSH exactly two times during the relevant period. Pl. Opp. to Def. MSJ at 5-6. Both times, Plaintiff requested an extension, on Nordstrom's behalf, for Nordstrom to remedy the shunt trip issue. Id. An essential element of protected activity under a retaliation statute is that the plaintiff assert a right adverse to the employer. See McKenzie, 94 F.3d at 1486. At no point during the relevant time period did Plaintiff report any violation on the part of Defendant to DOSH, or "step outside" of his role and act adversely to Defendant. Rather, the Plaintiff acted in accordance with his job responsibilities by requesting extensions on behalf of his client. The court finds that Plaintiff did not engage in protected activity for purposes of Section 1102.5, and GRANTS Defendant's motion for summary judgment as to Plaintiff's second cause of action. Plaintiff's motion for partial summary judgment regarding whether he disclosed what he reasonably believed to be a violation of California law is DENIED as moot.

**C. Wrongful Termination in Violation of Public Policy**

"When an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee may maintain a tort action and recover damages traditionally available in such actions." Tameny v. Atl. Richfield Co., 27 Cal.3d 167, 170 (1980); see also Freund v. Nycomed Amersham, 347 F.3d 752, 758 (9th Cir. 2003). Plaintiff has alleged a wrongful termination in violation of public policy, based on the California Occupational Safety and Health Act of 1973 (California Labor Code §§ 6300 et seq.), the California Whistleblower Protection Act (California Labor Code § 1102.5), California statutes regulating the safety and

United States District Court
For the Northern District of California

inspection of elevators (California Labor Code § 7300 et seq.), the rules and regulations of CalOSHA, and the American Society of Mechanical Engineers ("ASME") Safety Code for Elevators and Escalators.

To establish a prima facie case of wrongful discharge in violation of public policy, the Plaintiff must show:

(1) An employer-employee relationship

(2) A sufficient violation of public policy

(3) The termination was the legal cause of the employee's damage

(4) Nature and extent of the employee's damages

Holmes v. Gen. Dynamics Corp., 17 Cal.4th 1418, 1426, n. 8 (1993). The parties dispute whether Plaintiff has satisfied the second prong of the prima facie case by demonstrating a sufficient violation of public policy.

**i. Sufficient Violation of Public Policy**

To satisfy the second prong of the prima facie case, Plaintiff must show that Defendant violated a public policy that is "(1) delineated in either constitutional or statutory provisions; (2) 'public' in the sense that it 'inures to the benefit of the public' rather than serving merely the interests of the individual; (3) well established at the time of discharge; and (4) substantial and fundamental." Freund v. Nycomed Amersham, 347 F.3d 752, 758 (9th Cir. 2003) (quoting City of Moorpark v. Super. Ct., 18 Cal.4th 1143, 1159 (1998)). Additionally, the Plaintiff must show a nexus between his termination and the violation of the public policy. See Turner v. Anheuser-Busch, 7 Cal.4th 1238, 1258 (1994) (holding that employee failed to show a nexus between his whistle-blower activities and termination because the termination occurred five years after he reported illegal activity, and was based on poor performance); Read v. Lynwood, 173 Cal.3d 437, 444 (1985).

Where a plaintiff "relies upon a statutory prohibition to support a common law cause of action for wrongful termination in violation of public policy, the common law claim is subject to statutory limitations affecting the nature and scope of the statutory prohibition." Stevenson v.

Super. Ct., 16 Cal.4th 880, 904 (1997). As Plaintiff has failed to prove his prima facie case for his Section 6310 and Section 1102.5 claims, his claim for wrongful termination in violation of public policy must also fail to the extent it relies on these sections. The grounds remaining for Plaintiff's public policy claim thus are the California statutes regulating the safety and inspection of elevators (California Labor Code § 7300 et seq.), the rules and regulations of CalOSHA, and the ASME code.

**a. Sufficient Public Policy**

The court must first determine whether the remaining policies are sufficient to sustain a wrongful discharge cause of action. "[I]t is generally agreed that 'public policy' as a concept is notoriously resistant to precise definition, and that courts should venture into this area, if at all, with great care and due deference to the judgment of the legislative branch, 'lest they mistake their own predilections for public policy which deserves recognition at law.'" Gant v. Sentry Ins., 1 Cal.4th 1083, 1095 (1992) (finding that the plaintiff established a valid wrongful termination in violation of public policy claim based on the theory of constructive discharge in retaliation for refusal to commit perjury) (citation omitted) (overruled in part by Green v. Ralee Eng'g Co., 19 Cal.4th 66 (1998)). The California Supreme Court, considering these caveats against judicial policymaking, has determined that "[a] public policy exception carefully tethered to fundamental policies that are delineated in constitutional or statutory provisions strikes the proper balance among the interest of employers, employees, and the public." Id. at 1095. Later, the court also approved statutorily authorized administrative regulations as a source of fundamental public policy. Green v. Ralee Eng'g Co., 19 Cal.4th 66, 71-72 (1998).

Under the California Supreme Court's rationale, Plaintiff's public policy claim may properly be based upon California Labor Code § 7300, and the statutorily authorized regulations promulgated by CalOSHA. The ASME code on its own does not constitute a sufficient basis for the claim because it was not developed pursuant to statutory authority. Plaintiff has submitted evidence that CalOSHA has adopted through memorandum a relevant portion of the ASME code, A17.1 Rule 101:2(c)(3), which specifies that an elevator shunt trip may not be located in the



United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

machine room. Adelman Decl., Ex. 12. Plaintiff has failed, however, to point to any particular CalOSHA regulation which adopts this interpretation. Without evidence that CalOSHA has regulated the location of shunt trips pursuant to statutory authority, Plaintiff has failed to meet his burden of establishing that the portion of the ASME code at issue constitutes a sufficient public policy on which to base his claim.

**b. Nexus between the Violation of Public Policy and Plaintiff's Termination**

The court must next determine whether Plaintiff has established a nexus between a violation of California Labor Code § 7300 et seq. and/or the CalOSHA regulations, and his termination. See Turner, 7 Cal. 4th at 1258. To satisfy the nexus requirement, Plaintiff must show that (1) he engaged in protected conduct and (2) Defendant retaliated against him in violation of the public policy. See 3 Witkin, Summary of California Law, Agency and Employment § 250 (10th ed. 2005).

The conduct at issue in retaliatory termination cases generally falls into one of four categories: (1) refusing to engage in unlawful conduct, (2) performing a statutory obligation (e.g. jury duty or military service); (3) exercising a statutory right or privilege; or (4) reporting an alleged violation of law of public importance. Gantt, 1 Cal.4th at 1090 (1992). Plaintiff contends his conduct falls under the fourth category: reporting an alleged violation of law of public importance. To prevail, Plaintiff need not show that the violation he reported was actually unlawful, only that the employee had "reasonably based suspicions" of illegal activity. Green, 19 Cal.4th at 87.

As discussed in the previous section, the only remaining substantial public policies on which Plaintiff may rely are the California Labor Code § 7300 et seq. and CalOSHA regulations. Plaintiff has not submitted any evidence showing that he engaged in protected conduct under these policies. Neither his motion for summary adjudication, nor his opposition to Defendant's motion for summary judgment contains any evidence or argument relating to any specific sections of these policies. Plaintiff's failure to cite specific provisions in the remaining public policies that cover his

United States District Court
For the Northern District of California

conduct "puts [Defendant] and the court in the position of having to guess at the nature of the public policies involved, if any. This kind of showing is plainly insufficient to create an issue of material fact justifying a trial on the merits of [Plaintiff's] claims." Turner, 7 Cal.4th at 1257 (emphasis in the original). Having failed to submit evidence supporting his assertion that he engaged in protected conduct, Plaintiff has not established his prima facie case. Defendant's motion for summary judgment as to Plaintiff's third cause of action is therefore GRANTED.

**IV. Conclusion**

The Court finds that Plaintiff failed to demonstrate that he engaged in protected activity by communicating his concerns about the shunt trip location in the Nordstrom elevator to Defendant and DOSH. Because Plaintiff has not established a prima facie case for any of his claims, evaluation of the additional arguments contained in the parties' briefs is unnecessary. Accordingly, the court GRANTS Defendant's motion for summary judgment and DENIES Plaintiff's motion for summary adjudication.

Dated: November 8, 2012

EDWARD J. DAVILA
United States District Judge